**FLOORS–N–MORE, INC., and Floors–N–More of Mahopac, Inc.,**
**Plaintiffs,**

v.

**Freight LIQUIDATORS, Donald Ianuzzi, Mark Rubeo, and Vincent D'Agostino, Hickory Hill Furniture, Inc., Stanley Furniture Company Inc., and Millennium Division of Ashley Furniture Industries Inc., Defendants.**

**No. 00 CIV. 7195(CM).**

United States District Court,
S.D. New York.

May 16, 2001.

Joseph A. Maria, P.C., White Plains, NY, for Plaintiffs.

## MEMORANDUM DECISION AND ORDER DEFENDANTS' MOTIONS TO DISMISS

McMAHON, District Judge.

Plaintiffs Floors–N–More, Inc. and Floors–N–More of Mahopac, Inc. (collectively "Floors–N–More") are New York corporations which operate retail home

furnishings stores. Defendants Donald Iannuzzi ("Iannuzzi"), Mark Rubeo ("Rubeo"), and Vincent D'Agostino ("D'Agostino") (collectively the "Owners") are owners of defendant Freight Liquidators, a New York corporation which also sells home furnishings at retail. Plaintiffs allege that Freight Liquidators convinced defendants Millenium Division of Ashley Furniture ("Ashley"), Hickory Hill Furniture Inc. ("Hickory"), and Stanley Furniture Company, Inc. ("Stanley") (collectively the "Manufacturers"), home furnishings wholesalers, not to sell their product to plaintiffs in violation of the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, and Section 3 of the Clayton Act, 15 U.S.C. § 14. Plaintiffs also assert a claim for tortious interference with business relations.[1]

All defendants except Hickory and Stanley have moved to dismiss plaintiffs' amended complaint.[2] For the following reasons, the motions to dismiss are granted.

## PROCEDURAL HISTORY

Before turning to defendants' motions, I must address a preliminary matter with respect to the amended complaint. In a January 9, 2001 letter to the court, counsel for Freight Liquidators claimed that plaintiffs' amended complaint was not timely served and should thus be treated as a nullity. I directed defendants to submit additional motion papers on this issue. The parties subsequently moved to dismiss the amended complaint under Fed.R.Civ.P.

12(b)(6) for failure to state a claim. They did not address the timeliness question. I will thus proceed to decide defendants' motions on the basis of the amended complaint.

## BACKGROUND

All well-pleaded facts alleged in the complaint are accepted as true for the purposes of a motion to dismiss.

Floors–N–More sells various items of home furnishings, including but not limited to rugs, tile, flooring, furniture and bedding, from a store in Yonkers, New York, and from a store in Mahopac, New York. Plaintiffs maintain that they conduct business:

> with clients across the New York metropolitan region including such locales as Stamford and Madison in the state of Connecticut, Woodbridge and Parsippany in the state of New Jersey, and Poughkeepsie and Farmingdale in New York State.

(Compl. ¶ 19.)

Freight Liquidators also operates retail outlets in the New York Metropolitan area, including one in Yonkers and one in Mahopac, both of which are located in close proximity (according to plaintiffs, less than one-half mile) from the two corresponding Floors–N–More locations.

Both plaintiffs and Freight Liquidators purchase goods from defendant manufacturers.[3] Ashley manufactures and distributes furniture, including items generally

---

1. Plaintiffs withdrew their Third Cause of Action under the Robinson–Patman Act.

2. Plaintiffs' original complaint was filed on September 25, 2000. Defendants Freight Liquidators, Iannuzzi, Rubeo, and D'Agostino together filed a motion to dismiss on November 30, 2000. Defendant Ashley Furniture filed a separate motion to dismiss on December 22, the same day that plaintiffs filed their amended complaint. Ashley Furniture moved on

January 26, 2001, to dismiss the amended complaint, and the remaining defendants similarly moved on January 29.

3. Plaintiffs contend that "such buyer supplier relationships generally include the purchase of a quantity of goods to be used for display, necessitating a substantial investment by plaintiffs." (Compl. at ¶ 20.)

referred to in the trade as "case goods," e.g. bedroom and dining room sets. Plaintiffs allege that Ashley sells its products "throughout the United States, including but not limited to the New York metropolitan market." (Compl.¶ 18.)

Beginning in or about 1998, plaintiffs allege that the Owners of Freight Liquidators contacted some of their suppliers, including the manufacturer defendants, and "[t]hrough threats and demands based upon the high volume of business commanded by Freight Liquidators," conspired with defendants and others "to boycott, refuse to deal with, supply or trade with the plaintiffs." (Compl.¶ 23.) Plaintiffs allege that the manufacturers agreed to stop supplying goods to Floors–N–More "under threat that . . . Freight Liquidators would exercise monopolisitc market power in the New York metropolitan market and not buy from them in the future." (Compl.¶ 24.)

As a result of defendants' actions, plaintiffs claim that they are no longer supplied by Ashley and the other manufacturers, and that they have had to seek alternative sources of goods at considerable cost, including but not limited to: (1) the depreciation in value of goods held for showroom display; (2) the loss of business and new business opportunity; (3) the added costs of bringing in new lines of furnishings to replace the lines no longer supplied by the defendants. Plaintiffs also allege that defendants' actions have had "an actual adverse effect on competition as a whole in the relevant market," because the manufacturers' refusal to sell to plaintiffs,

> has worked to eliminate the benefits of competition accruing to consumers of these goods in the New York metropolitan market. Defendants [sic] actions have eliminated the ability of consumers to choose between plaintiffs and their

competitor Freight Liquidators in the sale of these goods.

(Compl. at ¶ 26.)

## CONCLUSIONS OF LAW

On a Rule 12(b)(6) motion, consideration is limited to the factual allegations in the complaint. *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.,* 58 F.Supp.2d 228, 235 (S.D.N.Y.1999). The pleader is entitled to all favorable inferences from the well-pleaded facts. *Electronics Communications Corp., v. Toshiba America Consumer Prods., Inc.,* 129 F.3d 240, 243 (2d Cir. 1997). However, conclusory statements will not substitute for sufficient factual allegations. *Id.* In an antitrust action, "[i]t is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been" set forth in the complaint. *George Haug Co. v. Rolls Royce Motor Cars Inc.,* 148 F.3d 136, 139 (2d Cir.1998) (quoting *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

### A. *Plaintiffs Fail To State A Claim Under the Clayton Act*

Plaintiffs cannot rely on Section 3 of the Clayton Act. The prohibitions of Section 3 extend only to tying or exclusive dealing arrangements. *See* Von Kalinowski, 1 Antitrust Laws and Trade Regulation § 21.02[2]. The complaint contains no reference to a tying or exclusive dealing arrangement.

█ To the extent that plaintiffs are relying on Section 4 of the Clayton Act, that section does not provide a substantive claim for relief; it merely enables private plaintiffs who have been injured by the

antitrust laws to sue for damages. 15 U.S.C. § 15.

Plaintiffs' First Cause of Action is dismissed.

### B. *Plaintiffs Fail To State A Claim Under The Sherman Act*

Plaintiffs do not state which section of the Sherman Act, Section 1 or Section 2 applies to their claims. I will thus analyze their claim under both sections.

#### 1. *Section 1*

■ Under Section 1 of the Sherman Act, "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal." 15 U.S.C. § 1; *Electronics Communications Corp.*, 129 F.3d at 243. Private causes of action for Sherman Act violations are permitted by Section 4 of the Clayton Act. 15 U.S.C. § 15; *Associated Gen. Contractors*, 459 U.S. at 529, 103 S.Ct. at 904.

"Plaintiffs asserting claims pursuant to Sherman Act § 1 are required to 'allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized.'" *Cancall PCS, LLC v. Omnipoint Corp.*, No. 99 CIV 3395, 2000 WL 272309, *4 (S.D.N.Y. March 10, 2000) (quoting *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 704 (S.D.N.Y.1997)). Defendants contend that plaintiffs' complaint does not clearly allege a specific relevant product market or line of commerce in which competition has been suppressed. At different places in the complaint, plaintiffs refer to the sale of "case goods" (e.g. bedroom and dining sets (Compl.¶ 15, 17)); "upholstered seating and case goods" (Compl.¶ 20, 22), and "household goods, furnishing, products, materials, bedding, furniture and various other items"

(Compl.¶ 23). The relevant market will differ depending on whether it encompassed a broad range of goods or a narrow group of products (such as "upholstered seating"). *See Cancall PCS*, 2000 WL 272309 at *4. However, I will not attempt to resolve which market is properly the subject of the complaint, as plaintiffs' antitrust claims fail on other grounds.

Plaintiffs must demonstrate that an agreement constituted an unreasonable restraint of trade either *per se* or under the rule of reason. *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 542 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993). Plaintiffs do not specify in the amended complaint which type of restraint defendants' are alleged to be committing. In their motion papers, however, they argue both theories. I will address each in turn.

#### a. Plaintiffs Fail To Allege A *Per Se* Unreasonable Restraint Of Trade

"Conduct considered illegal per se is invoked only in a limited class of cases, where a defendant's action are so plainly harmful to competition and so obviously lacking in any redeeming pro-competitive values that they are conclusively presumed illegal without further examination." *Id.* (internal quotation and citations omitted).

■ The *per se* rule is not applicable where there are "vertical" restraints—agreements between firms "at different levels of distribution"—that do not include price fixing. *See Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 734–6, 108 S.Ct. 1515, 1525, 99 L.Ed.2d 808 (1988). Plaintiffs have alleged that Freight Liquidators contacted some of its suppliers and threatened not to buy goods from them unless they refused to deal with Floors–N–More. Such an agreement is a

vertical restraint, and absent allegations of price fixing, it does not state a *per se* violation of the Sherman Act.

■ Horizontal restraints, i.e. agreements between competitors at the same level of market structure, are *per se* violations of the Sherman Act. *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d, 126, 131 (2d Cir.), *cert. denied,* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Plaintiffs contend that the complaint also alleges a horizontal restraint, consisting of a conspiracy among Ashely, Hickory, and Stanley not to sell to plaintiffs, amounting to a "group boycott" of Floors–N–More by those manufacturers. Plaintiffs state in conclusory fashion that defendants, "acting in concert," agreed to stop supplying household goods to Floors–N–More.

■ Even construing the complaint liberally, and viewing the allegation as a claim of horizontal restraint, this statement is utterly conclusory. The plaintiff must do more than allege the existence of a conspiracy—it must allege some facts in support of the claim. *Granite Partners,* 58 F.Supp.2d at 235; *see also Heart Disease Research Found. v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972) ("[A] bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal."); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 687 F.Supp. 832, 837 (S.D.N.Y. 1988) (dismissing complaint which alleged that the defendants "conspired and contracted with [each other] ... to restrain trade"). Plaintiffs do not provide a single fact in support of this allegation. They do not even claim that any of the manufacturers, Ashley, Hickory or Stanley, was aware of any other manufacturers' decision to stop selling to plaintiffs.

Plaintiffs thus fail to allege a *per se* violation of the Sherman Act.

**b. Plaintiffs Fail To Allege Violations Of Section 1 Of The Sherman Act Under The Rule of Reason**

■ Plaintiffs' allegation of the vertical agreement between Freight Liquidators and the manufacturers must thus be analyzed under the rule of reason. *See Electronics Communications Corp.*, 129 F.3d at 243 ("Absent price-fixing between a supplier and distributor, vertical restraints are generally subject to 'rule of reason' analysis.") This involves a three-step analysis. First, "plaintiff bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in the relevant market...." *Capital Imaging Assocs.*, 996 F.2d at 543. If plaintiff succeeds, the burden shifts to the defendant to establish the "pro-competitive 'redeeming virtues'" of the action. *Id.* If defendant succeeds, plaintiff must show that the same pro-competitive effect could be achieved through alternate means that are less restrictive of competition. *Id; Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir.1997).

■ Plaintiffs have failed to allege an adverse effect on competition. First, they claim that defendants's actions have forced Floors–N–More to seek alternative sources for the goods they could no longer obtain from Ashley and the other defendants. The fact that plaintiff was harmed by defendants' conduct is insufficient to show harm to competition. *See Oreck Corp.*, 579 F.2d at 133–34 (That another customer of the defendant convinced the defendant to cease dealings with plaintiff did not suffice to show anti-competitive effect.).

Furthermore, to show an adverse effect on the market, a plaintiff "must ... show more than just an adverse effect on competition among different sellers of the

same product...." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir.1995); *see also Electronics Communications Corp.*, 129 F.3d at 245 (finding that antitrust allegations did not state a claim where they alleged that Toshiba's actions in failing to sell cellular telephones to the plaintiff violated Section 1). The complaint contains only two relevant allegations on this point. First is a conclusory and entirely insufficient statement that defendants' conduct "has worked to eliminate the benefits of competition accruing to customers of these goods in the New York metropolitan market." Second, plaintiffs allege that "defendants have eliminated the ability of consumers to choose between plaintiffs and their competitor Freight Liquidators in the sale of these goods." This allegation is also insufficient. The fact that customers can no longer purchase Ashley furniture products (or products from Hickory or Stanley) at Floors–N–More does not mean that competition has been harmed. For instance, plaintiffs have not alleged that Freight Liquidators is now the only store in the geographic market where customers can purchase products made by the manufacturers, or that prices for the manufacturers' furniture have been affected. *See Cancall PCS*, 2000 WL 272309 at *6 (plaintiff failed to plead harm to competition because it did not allege that any consumer would pay higher prices as a result of the challenged conduct, or that consumers would not be able to obtain the product from other sources). They only state, without any further elaboration, that defendants' action has furthered "the monopolistic power" of Freight Liquidators. This is insufficient to survive a motion to dismiss.

### 2. *Section 2*

■ Section 2 of the Sherman Act provides that "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize, any part of the trade or commerce among the several States ... shall be deemed guilty of a felony." 15 U.S.C. § 2.

Under Section 2, a plaintiff must allege, (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize. "Intent alone is not sufficient, however; the defendant's power in the relevant market must be established, to establish whether the defendant is a monopolist or is threatening to become one." *Electronics Communications. Corp.*, 129 F.3d at 246 (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455–56, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993)). Plaintiffs have failed to allege defendants' monopoly power and therefore cannot establish a Section 2 Sherman Act claim. Furthermore, I have already found that plaintiffs failed to allege how any agreements between Floors–N–More and the manufacturers have harmed competition. Thus I find the complaint does not show how the agreements serve to further an alleged monopolization scheme. *See Electronics Communications Corp.*, 129 F.3d at 246.

Plaintiffs' Second Cause of Action is dismissed.

### CONCLUSION

The First and Second claims are dismissed as against defendants Ianuzzi, Rubeo, D'Agostino, and Ashley Furniture. As I no longer have jurisdiction over plaintiffs' pendent state law claim, the Fourth Cause of Action is also dismissed as against these defendants.

■ Hickory Hill and Stanley Furniture did not join in either motion to dismiss, nor have they served an answer to plaintiffs' complaint. They would thus appear

to be in default. It is nevertheless appropriate to dismiss the complaint against these defendants. I would not enter a default judgment even if plaintiff applied for same, as "a default should not be entered when it would be promptly set aside under [Fed.R.Civ.P.] Rule 55(c),... [which] provides a 'lenient' test for relieving a party of default."[4] *National Trust Co. v. American Home Assurance Co.,* No. 86 Civ. 1406–CSH, 1987 WL 5837, *3 (S.D.N.Y. Jan. 22, 1987). "[T]he principle factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). While I have no information about the willfulness of defendants' default, it is clear that these defendants have a valid defense, as I have already held that plaintiffs' claims are without merit. For this reason, Floors–N–More will not be prejudiced if I also dismiss Hickory Hill and Stanley.

The complaint is dismissed as to all parties. The clerk is directed to close this case.

This constitutes the order and decision of the Court.

---

**4.** Rule 55(c) states as follows:

> **Setting Aside the Default.** For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).