16 F.3d 420
 29 U.S.P.Q.2d 1314
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AMWAY CORPORATION, Plaintiff-Appellee,
v.
NARTRON CORPORATION, Defendant-Appellant.
 Nos. 93-1220, 93-1422.
 United States Court of Appeals, Federal Circuit.
 Dec. 6, 1993.
Rehearing Denied Jan. 5, 1994.
 
 Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 DECISION
 
 1
 Nartron Corporation ("Nartron") appeals from the judgment of the United States District Court for the Western District of Michigan, File No. 1:92-CV-156, entered on December 15, 1992. The district court granted Amway Corporation's ("Amway's") motion for summary judgment, holding all claims of U.S. Patent No. 5,089,144 invalid under the on-sale bar provision of 35 U.S.C. Sec. 102(b). The district court's decision is a final decision within the meaning of 28 U.S.C. Sec. 1295, notwithstanding the fact that, at the time this appeal was noticed, the recoverability of attorney fees under 35 U.S.C. Sec. 285 remained undetermined in the district court. See Budinich v. Becton Dickinson and Co., 486 U.S. 196, 199-200, 108 S.Ct. 1717, 1720-21, 100 L.Ed.2d 178 (1988). Because the district court's decision was premature and there exists a genuine issue of material fact, we vacate the grant of summary judgment and remand the case for further proceedings consistent with this opinion.
 
 DISCUSSION
 I.
 
 2
 Nartron is the assignee of U.S. Patent No. 5,089,144 (the " '144 patent"), the application for which was filed on December 8, 1989; the '144 patent was issued on February 18, 1992. The '144 patent relates to end-of-life ("EOL") indicators for carbon filters used in home water treatment systems. On February 28, 1992, Amway filed suit in the district court seeking a declaration that the '144 patent is invalid.
 
 
 3
 On June 9, 1992, Amway filed a motion for summary judgment on the ground that the '144 patent is invalid because the invention claimed in the patent was on sale more than one year before the filing of the patent application. See 35 U.S.C. Sec. 102(b). Amway alleged that price quotations, which Nartron provided to Amway on September 30 and October 10, 1988, were invalidating offers to sell the patented invention. Amway filed four declarations and various items of documentary evidence in support of its motion.
 
 
 4
 In its June 29, 1992 response in opposition to the motion, Nartron filed a declaration and a copy of a letter between the parties. Also on June 29, 1992, Nartron filed, pursuant to Rule 56(f), Fed.R.Civ.P., a declaration of its attorney, Robert Tuttle, wherein Mr. Tuttle stated that Amway had provided Nartron with incomplete and evasive responses to discovery requests relating to section 102(b) validity issues. In this declaration Mr. Tuttle also stated:
 
 
 5
 In order to [sic] Nartron to develop a record in support of its opposition to Amway's motion for summary judgment, it needs to conduct discovery of one or more of the following: Messrs. Richard Pluta, Dennis Kidd and Michael Herblet, and topical Rule 30(b)(6) witness representatives of Amway knowledgeable of the totality of the circumstances in which Nartron furnished prototype and pre-production samples of the end-of-life indicator to Amway prior to December 8, 1988.
 
 
 6
 On December 15, 1992, the district court, without hearing argument, granted Amway's motion. The district court held that the September 30 and October 10, 1988 price quotations were definite offers to sell an EOL indicator, Op. at A7-8; that the EOL indicator offered for sale fully anticipated each patent claim, or would have rendered each of them obvious, Op. at A8; and that Nartron offered no explanation for its attempted commercial exploitation of the EOL indicator, Op. at A8-9. The district court's decision came before an April 1, 1993 court-ordered discovery completion date, and it appears from the record that, at the time of the decision, the discovery referenced in Mr. Tuttle's affidavit had not taken place.
 
 II.
 
 7
 An issue may be decided on a motion for summary judgment when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1265, 20 USPQ2d 1746, 1747 (Fed.Cir.1991). The movant's burden is to show that no fact material to the issue is in dispute, and that even if all material factual inferences are drawn in favor of the non-movant, the movant is entitled to judgment as a matter of law. Id. Since summary judgment is a dispositive device, when one party has yet to exercise its opportunities for pretrial discovery, it should only be granted in appropriate circumstances. See Fed.R.Civ.P. 56(f); National Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir.1975).
 
 III.
 
 8
 The district court held that the patented EOL indicator was "on sale" within the meaning of 28 U.S.C. Sec. 102(b). Section 102(b) bars entitlement to a patent when:
 
 
 9
 (b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States....
 
 
 10
 35 U.S.C. Sec. 102(b). The party asserting the on sale bar must prove by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the filing of the application for the subject patent and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. Envirotech Corp. v. Westech Eng'g, Inc., 904 F.2d 1571, 1574, 15 USPQ2d 1230, 1232 (Fed.Cir.1990). Once a challenger makes out a prima facie case, the patent holder must come forward with convincing evidence to counter that showing. U.S. Environmental Prods., Inc. v. Westall, 911 F.2d 713, 716, 15 USPQ2d 1898, 1901 (Fed.Cir.1990).
 
 
 11
 Whether an invention is on sale is a question of law based on the totality of the circumstances. Envirotech, 904 F.2d at 1574, 15 USPQ2d at 1232. The totality of the circumstances approach is necessary because the policies underlying the on sale bar, in effect, define it. Id. These policies include (1) discouraging the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available; (2) favoring the prompt and widespread disclosure of inventions; (3) allowing the inventor a reasonable amount of time following sales activity to determine the potential economic value of a patent; and (4) prohibiting the inventor from commercially exploiting the invention beyond the statutorily prescribed time. Id.
 
 IV.
 
 12
 On appeal, the parties disagree over the purpose for which Nartron gave Amway the September 30 and October 10, 1988 price quotations for production units. Amway argues, as the district court held, that the quotations were definite offers to sell. Nartron, on the other hand, argues that the quotations were in effect price projections offered so that Amway could decide whether to continue to fund an EOL indicator development project. The purpose for which the quotations were provided, whatever that may be, is a material fact, as it has a direct bearing upon whether invoking the on sale bar would further the bar's underlying policies noted above. We believe the district court erred in concluding, on the basis of the record before it, that there was no genuine issue as to this material fact, particularly when discovery had not been completed and Amway had the burden of proving invalidity by clear and convincing evidence.
 
 
 13
 We have examined the proof offered to the district court and conclude that the purpose for which the quotations were given cannot be resolved therefrom. At the outset, we note that there is no contemporaneous documentation which directly answers the question of purpose. Further, the contemporaneous documentation that was before the district court could be interpreted to support either party's position. For example, an October 10, 1988 internal Amway memorandum suggests that Amway would not proceed with development unless the final product could be supplied at or below a $12.00 per unit target price. Further, Amway did not proceed with testing until it received a production quotation from Nartron that was below $12.00 per unit. These facts support Nartron's position that the parties intended the quotations to be price projections offered so that Amway could decide whether or not to continue with the development project.
 
 
 14
 On the other hand, Nartron's September 30 quotation forms, as well as Nartron's cover letter accompanying the forms, state that Nartron required a "commitment" that Amway purchase a minimum of 50,000 production units. This seems to support Amway's position that the quotations were definite offers to sell. However, a contrary view is feasible. The same September 30 quotation forms state that if Amway did not purchase the 50,000 units, Nartron would levy a cancellation charge "to cover absorbed chip development costs." This statement indicates that the "commitment" sought by Nartron was not for the purchase of production units, but rather for the reimbursement of development costs.
 
 
 15
 Neither do the declarations offered in support of Amway's motion clarify the disputed issue. Of the four declarations offered by Amway, only one--that of Walter Gorak, a current Amway employee--addresses the purpose of the quotations. This declaration, however, offers no additional proof to that already provided in the documentary evidence; it merely states, in conclusory terms, that the quotations were offers to sell.
 
 
 16
 We thus conclude that there is at least one disputed genuine issue of material fact--the intent of the parties as to the purpose for which the quotations were given. This fact must be resolved before the district court can render a decision on the on sale bar issue.
 
 V.
 
 17
 Amway contends that Nartron, in this appeal, has raised for the first time its argument that the purpose of the quotations is disputed. Amway thus contends that Nartron has waived the argument. It is true that issues, and sometimes even arguments, may be deemed waived if not clearly raised before the district court. See CPG Prods. Corp. v. Pegasus Luggage, Inc., 776 F.2d 1007, 1010, 227 USPQ 497, 498 (Fed.Cir.1985). It is also true that a party may have summary judgment entered against it if it fails to properly respond to a supported summary judgment motion. See Fed.R.Civ.P. 56(e). We do not think, however, that there has been such a waiver or failure to respond in this case, primarily because Nartron's declaration, filed pursuant to Rule 54(f), Fed.R.Civ.P., was sufficient to put the court on notice that the totality of the circumstances surrounding the alleged offer for sale was not yet known at the time Nartron was required to respond to Amway's motion.
 
 
 18
 We also do not think, based upon the record before us, that Nartron is guilty of sitting on its hands, despite the fact that, at the time the district court decided the motion for summary judgment, the motion had been pending for over six months, which suggests that Nartron had adequate opportunity to supplement its opposition proof. It appears that there were significant disputes over discovery matters during much of the six months. Further, Amway's motion was decided three and a half months before the court-ordered discovery completion date, and after the completion of discovery would seem to be the most appropriate time for Nartron to update its opposition proof. Finally, given that there was no oral argument on the motion, it appears that Nartron was given no notice that a decision on the motion was imminent. Had such notice been given, Nartron may have either supplemented its opposition proof prior to the court's decision or presented reasons why full opposition was not yet possible.
 
 
 19
 In sum, given the "totality of the circumstances" nature of the issue being decided and the stage of the proceedings, the district court should have waited until Nartron had completed the necessary discovery and had supplemented its opposition proof before ruling on the motion for summary judgment. At present, there is at least one genuine issue of material fact--the parties' intent regarding the purpose of the price quotations--which renders summary judgment inappropriate.
 
 
 20
 LOURIE, Circuit Judge, dissenting.
 
 
 21
 I respectfully dissent because, while I agree that there may be genuinely disputed issues, they are not material to the legal point at issue. The invention was already complete and reduced to practice and the continued development work was only directed to enabling it to be produced at an economical price.